KRISTEN CLARKE, Assistant Attorney General
REBECCA B. BOND, Chief (CSBN 202220)
AMANDA MAISELS, Deputy Chief
CHARLOTTE LANVERS, Trial Attorney (CSBN 257814)
CHRISTINE KIM, Trial Attorney (DCBN 1044186)

   U.S. Department of Justice
   950 Pennsylvania Ave, N.W.–4CON
   Washington, D.C.  20530
   Telephone: (202) 305-0706
   Facsimile: (202) 305-9775
   Charlotte.Lanvers@usdoj.gov

STEPHANIE M. HINDS (CABN 154284)
United States Attorney
MICHELLE LO (NYBN 4325163)
Chief, Civil Division
GIOCONDA R. MOLINARI (CABN 177726)
Assistant United States Attorney

   United States Attorney's Office
   Northern District of California
   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102
   Telephone: (415) 436-7220
   Facsimile: (415) 436-6748
   Gioconda.Molinari@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

_____ DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>   Defendant. | **CASE NO. 22-7345**<br><br>**COMPLAINT PURSUANT TO THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §§ 12131-12134** |

THE UNITED STATES OF AMERICA alleges the following:

## I.   INTRODUCTION

1. The United States files this action against the Regents of the University of California on behalf of the University of California at Berkeley (collectively, UC Berkeley) to enforce Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131-12134, and its implementing regulation, 28 C.F.R. Part 35.

2. UC Berkeley creates and publishes on the internet videos and audio files of courses, lectures, sporting events, conferences, admissions information, graduation ceremonies, and other university events (online content) that are inaccessible to qualified individuals with disabilities.

3. Such online content is a service, program, or activity of UC Berkeley, and includes UC Berkeley's free online courses known as Massive Online Open Courses (MOOCs), as well as audio and video content on its YouTube and Apple Podcasts channels.

4. Many individuals with disabilities, including those who have vision, hearing, or manual disabilities, need auxiliary aids and services to access and interact with online content. Examples of auxiliary aids and services include captioning and other accessible electronic and information technology. 42 U.S.C. § 12103; 28 C.F.R. § 35.104. In order to access online content, people who are blind may use screen readers, which are devices that speak the text that appears on a screen. People who are deaf or hard of hearing may use captioning to understand aural information conveyed in a video. And people whose disabilities affect their ability to grasp and use a mouse may use voice recognition software to control their computers and other devices with verbal commands or they may use keyboard commands to navigate online content.

5. UC Berkeley fails to provide much of its online content in an accessible manner when necessary to ensure effective communication with individuals with disabilities. Some of UC Berkeley's online content includes videos without captions or videos with automated captions (typically referred to as automatic captions) that are inaccurate, lack punctuation or proper grammar, and are difficult or impossible to understand. As a result, the audio content on the video is inaccessible to people with hearing disabilities. Some of the visual online content

does not include audio description or alternative text, which makes it inaccessible to people with vision disabilities.  Audio description is the verbal description or narration of a visual image (for example, a picture, scene from a movie or play, graphic or other image displaying a process or function) in order to provide essential information to individuals with vision disabilities.  Similarly, alternative text conveys the content and function of an image, including pictures, illustrations, or charts, to individuals with vision disabilities so that they can understand the image.  Some online content includes documents and links that are inaccessible to screen readers or are not keyboard-accessible because of improper formatting.  As a result, the documents and links are inaccessible to individuals with vision or manual disabilities, including those who use screen readers or who do not use a mouse.  In practice, this means that such individuals may be unable to navigate the website or may be denied access to information on the website.

6. UC Berkeley's failure to provide accessible online content deprives individuals with disabilities of a full and equal opportunity to participate in and enjoy the benefits of UC Berkeley's services, programs, or activities.

## II.     JURISDICTION AND VENUE

7. This Court has jurisdiction of this action under 29 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 12133.

8. This Court has the authority to grant the relief sought under 42 U.S.C. § 12133, and 28 U.S.C. §§ 2201 and 2202.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial portion of the events or omissions giving rise to this cause of action took place within this District.

10. Divisional Assignment.  Assignment to the San Francisco or Oakland Division is proper under Civil L.R. 3-2(c) because a substantial part of the events or omissions that give rise to the claims occurred in Alameda County.

## III.    PARTIES

11. Plaintiff is the United States of America.  The Department of Justice is responsible for administering and enforcing Title II and its implementing regulation.  28 C.F.R.

pt. 35, Subpt. F.  The Attorney General is authorized to bring a civil action to enforce Title II.  42 U.S.C. § 12133.  The United States has fulfilled all conditions precedent to the filing of this action.

12. Defendant, the Regents of the University of California, is an instrumentality of the State of California.  The Regents of the University of California is a constitutional corporation that is established and governed by the laws of, and funded by, the State of California.  Cal. Const. art. IX, § 9.  The Regents of the University of California is also a public entity within the meaning of Title II, 42 U.S.C. § 12131(1)(B) and 28 C.F.R. § 35.104, and under California law, Cal. Gov't Code §§ 945, 811.2.  The Regents of the University of California has the full powers of the organization and government of the University of California.  Cal. Const. art. IX, § 9.  The University of California at Berkeley is a subsumed campus of the University of California and is owned and operated by The Regents.  The term "UC Berkeley" in this Consent Decree includes the University of California at Berkeley and the Regents of the University of California.  The University of California at Berkeley is a public entity within the meaning of 42 U.S.C. § 12131(1)(B) and 28 C.F.R. § 35.104.  The University of California at Berkeley's main campus is located in the City of Berkeley in Alameda County, California.

### IV.    FACTS

**A. Procedural Background**

13. In April 2014, the National Association of the Deaf (NAD), on behalf of its members, filed a complaint with the United States Department of Justice under Title II of the ADA alleging that thousands of UC Berkeley's free online courses, lectures, and other campus events in video and audio formats are inaccessible to individuals who are deaf or hard of hearing.  Before filing its complaint, NAD requested that UC Berkeley make its online content accessible, but UC Berkeley failed to do so.

14. In October 2014, the United States initiated an investigation of UC Berkeley to evaluate the accessibility of its online content.

15. The United States notified UC Berkeley of the investigative findings and conclusions in a letter dated August 30, 2016.  The United States determined that much of UC

Berkeley's online content available as MOOCs on UC BerkeleyX and available on its YouTube and iTunes U channels was inaccessible to individuals with hearing, vision, or manual disabilities and that UC Berkeley therefore denied them the full and equal enjoyment of its services. The United States explained the remedial measures necessary for UC Berkeley to come into compliance with Title II of the ADA and expressed interest in resolving this matter cooperatively.

**B. UC Berkeley Publishes Inaccessible Online Content and Has Failed to Make its Programs, Services, and Activities Equally Accessible to Individuals with Disabilities**

16. UC Berkeley continues to provide inaccessible online content on its UC BerkeleyX, YouTube, and Apple Podcasts channels despite being notified by the United States over five years ago that doing so violates the ADA.

UC BerkeleyX

17. Since May 2012, UC Berkeley, in partnership with edX, a web-based platform, has made MOOCs available online through UC BerkeleyX. MOOCs are courses of study available online to the public, for free.

18. UC Berkeley has offered and continues to offer a wide range of MOOCs on UC BerkeleyX. Courses include: The Writing Process, Effective Business Writing, Writing for Social Media, Writing for Social Justice, The Science of Happiness, How to Save Money: Making Smart Financial Decisions, Empathy and Emotional Intelligence at Work, The Foundations of Happiness at Work, Marketing Analytics, and Blockchain Technology. Such courses are offered on a semester basis or on a self-paced basis.

19. The United States first reviewed UC Berkeley's MOOCs on UC BerkeleyX in 2015 and 2016 and determined that all were inaccessible to individuals with disabilities. The United States reviewed 16 UC Berkeley MOOCs in 2015 and 10 UC Berkeley MOOCs in 2016.

20. Following that review, the United States determined that it would be impossible for an individual with a hearing, vision, or manual disability, or more difficult than for participants without those disabilities, to access the content of the MOOCs reviewed. For

example, some videos lacked captions, which would make audio content on the video inaccessible to people with hearing disabilities.  Other content posed barriers for people with vision disabilities or those who use screen readers, such as videos containing text with inadequate color contrast or using color alone to convey information; images with incorrect or missing alternative text; and videos lacking audio description or an accessible text alternative, such as a PDF or Word document.

21. Further, individuals with vision or manual disabilities, including those who use screen readers or who do not use a mouse, would have difficulty navigating and accessing all of the content on a website or document.  Some headings were neither defined nor arranged in a logical order and page structure was not always defined, contained empty elements, or was incorrectly defined.  As a result, a person with a disability who uses a screen reader would not have access to all the information or it would be illogically ordered, making it difficult to understand or navigate through the content.  Along these lines, when elements are not properly defined, individuals who do not use a mouse would not be able to navigate a website or document using a keyboard or voice commands.  Some tables did not have row and column headers defined so a person with a disability would lack critical information about the relevant values in the table.  Math equations were not always defined in a comprehensible way for individuals with vision disabilities; and many PDFs were inaccessible because the tag structure was undefined or incorrect, so individuals with vision disabilities who use screen readers could not effectively navigate or understand the documents.  The United States notified UC Berkeley of these barriers on August 30, 2016.

22. In 2021, the United States reviewed 10 MOOCs on UC BerkeleyX to assess whether the previously identified problems continued, and found that the same problems continue to exist.  All of the MOOCs reviewed were inaccessible and it would be impossible for an individual with a hearing, vision, or manual disability, or more difficult than for individuals without disabilities, to access the content.  Examples of barriers to access include the following: videos without captions or transcripts, which make audio content on the video inaccessible to people with hearing disabilities; images without alternative text or without sufficient color

contrast, which makes visual content inaccessible to people with vision disabilities; and documents and links with improper formatting, which make them inaccessible to people with vision and manual disabilities, including those who use screen readers or who do not use a mouse.

### YouTube Channels

23. YouTube is an online video-sharing platform that allows users to upload, view, rate, share, add to playlists, report, comment on videos, and subscribe to other users. Available content includes documentary films, educational videos, and live streams.

24. UC Berkeley operates at least 93 channels on YouTube, and the channels contain online content, including audio and video. Over 25,000 videos are available to the public on UC Berkeley's YouTube channels.

25. In addition to its course lecture videos, UC Berkeley makes available hundreds of videos related to admissions, study abroad, sports events, symposia, graduation ceremonies, and other programming on its various YouTube channels.

26. These channels are operated by or on behalf of UC Berkeley departments or units, e.g., the Office of Communications & Public Affairs, Office of Student Affairs, Haas School of Business, and UC Berkeley Extension.

27. The overwhelming majority of videos on UC Berkeley's YouTube channels are inaccessible to individuals who are deaf or hard of hearing because they either lack captions or have inaccurate or incomplete automatic captioning rendered by YouTube's speech recognition technology.

28. The automatic captioning used by UC Berkeley on its YouTube channels lacks punctuation, resulting in a string of words, which may make the content difficult or impossible for individuals with hearing disabilities to understand.

29. Similarly, automatic captioning cannot and does not identify the speaker of the captioned text, so when there are multiple speakers in a video or audio recording, a viewer with a hearing disability cannot identify the speaker of the captioned text, especially when speakers talk at the same time.

30. Although UC Berkeley can remediate inaccurate or incomplete automatic captioning rendered by YouTube, UC Berkeley fails to do so.

31. On August 30, 2016, the United States notified UC Berkeley that online content on its YouTube channels was not provided in an accessible manner necessary to ensure effective communication with individuals with disabilities. The United States had reviewed over 500 videos on UC Berkeley's YouTube channels and found that only approximately 11.7% of those videos had manual captions, and the remaining 88.3% either lacked captions or had automatic captioning generated by YouTube, which was often inaccurate or incomplete.

32. In 2021, the United States confirmed that over 20,000 of UC Berkeley's YouTube videos have either no captions or have automatic captioning and therefore the audio content on the videos is inaccessible to individuals with hearing disabilities. These videos include athletic events, lectures, graduation ceremonies, symposia, educational programs, and information for prospective students and members of the public.

33. Many UC Berkeley YouTube videos also remain inaccessible to individuals with vision disabilities, because they lack adequate color contrast or any alternative format for the visual information contained in the videos.

34. Without adequate color contrast, individuals with vision disabilities may not be able to read the text in videos or presentations, or understand colored bar graphs reflecting different outcomes. Similarly, those who cannot see the pictures shown in the videos or presentations need alternative formats explaining what the visual information conveys.

<u>Apple Channels</u>

35. iTunes U was a dedicated portion of the Apple iTunes Store that offered free educational online content from universities including UC Berkeley. The online content included course lectures, language lessons, lab demonstrations, sports highlights, and campus tours in audio and video formats.

36. In 2015, the United States reviewed 27 lecture videos on UC Berkeley iTunes U and found that all lacked captions and lacked adequate color contrast or any alternative format for the visual information contained in the videos. On August 30, 2016, the United States

notified UC Berkeley that the online content on its iTunes U channels was not provided in an accessible manner necessary to ensure effective communication with individuals with disabilities.

37. Between 2019 and 2021, UC Berkeley migrated its online content from iTunes U to other Apple programs, including Apple Podcasts.

38. UC Berkeley also continues to create and post new online content on its Apple Podcasts channels.

39. UC Berkeley currently operates over 70 channels on Apple Podcasts, and the channels contain online content, including audio and video.

40. In 2021, the United States reviewed 23 UC Berkeley Apple Podcasts channels and found that the vast majority of the online content lacked any alternative format (such as alternative text) to describe the visual information contained in the videos, making such information inaccessible to individuals with vision disabilities.  None of the video online content on UC Berkeley Apple Podcasts channels has captions.  And the vast majority of the audio online content offers no alternative format, such as a transcript.

UC Berkeley State Law and University Policy Requirements

41. UC Berkeley has been required pursuant to university policy and California law to provide online content that meets certain standards for accessibility for many years.

42. Since January 1, 2003, California state law has required that state governmental entities or entities using state funds comply with the accessibility requirements of Section 508 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794d, and the implementing regulations set forth in Part 1194 of Title 36 of the Federal Code of Regulations.  *See* Cal. Gov't Code § 11135 (2003); Cal. Gov't Code § 7405 (2017).

43. Since January 18, 2018, Section 508 has required that covered entities' information and communication technology comply with standards issued by the World Wide Web Consortium (W3C): the Web Content Accessibility Guidelines (WCAG 2.0), a globally recognized voluntary consensus standard for web content and information and communication technology.  *See* 36 C.F.R. pt. 36.

44. Since 2013, UC Berkeley has also been subject to the University of California Office of the President's Information Technology Accessibility Policy (Accessibility Policy).

45. The Accessibility Policy commits UC Berkeley to "supporting an information technology (IT) environment that is accessible to all, and in particular to individuals with disabilities." *See Policy IMT -1300 Information Technology Accessibility*, University of California, https://policy.ucop.edu/doc/7000611/IMT-1300 (last visited Nov. 21, 2022). By using technology that is "designed . . . to be accessible to people with disabilities, including those who use assistive technologies," UC Berkeley "helps ensure that as broad a population as possible is able to access, benefit from, and contribute to its electronic programs and services." *Id.*

46. The Accessibility Policy adopts WCAG 2.0 AA as the technical standard for ensuring website accessibility. *See Policy IMT -1300 Information Technology Accessibility*, Addendum A and Appendix A, University of California, https://policy.ucop.edu/doc/7000611/IMT-1300 (last visited Nov. 21, 2022).

### C. UC Berkeley Has Harmed Individuals with Disabilities

47. UC Berkeley has denied individuals with disabilities access to significant portions of its online content and the information and programming provided in that content, such as lectures, sports events, symposia, and other events. UC Berkeley's failure to provide appropriate auxiliary aids and services has limited or foreclosed their abilities to fully participate in UC Berkeley's online programs, services, or activities.

48. Individuals with disabilities have been harmed because of UC Berkeley's failure to afford their equal participation in its online programs, services, or activities. These individuals would like to use online resources both for their personal growth and entertainment and to support their work, but are precluded from using much of UC Berkeley's online content because it is inaccessible to them and other individuals with disabilities.

49. Jeff Bibb is deaf. Mr. Bibb resides in Fremont, California with his wife and two young children. Mr. Bibb teaches high school level American Sign Language, International Studies, and Sports and Social Justice at the California School for the Deaf in Fremont,

California.  Mr. Bibb uses YouTube content while teaching ASL and Sports and Social Justice courses.  He avoids using UC Berkeley's YouTube content in his courses because much of it has inaccurate captions due to its reliance upon automatic captioning.  He cannot use automatic captioning to supplement his teaching because it is often inaccurate, viewers cannot identify who is speaking, and information is miscommunicated.  He adds that, while written English may be secondary for the hearing population, it is the primary way for deaf individuals to access the English language, and it is therefore critically important that captions be accurate.

50. Mr. Bibb enjoys watching UC Berkeley Cal Bears football games.  He typically attends at least one or two games in person each year, and watches others on the Cal Bears YouTube Channel (https://www.youtube.com/user/calathletics).  Mr. Bibb finds it frustrating, however, that UC Berkeley does not provide accurate captioning of games on its Cal Bears YouTube Channel.

51. Adam Jarashow is deaf.  He teaches at the California School for the Deaf in Fremont, California.  As an educator, Mr. Jarashow would like to use and share with his students UC Berkeley's online content, including UC Berkeley's YouTube channels, but he cannot because much of it has inaccurate automatic captioning.  He explains that, just as a sentence without capitalization and punctuation can have several different meanings and can be confusing to decipher, so is automatic captioning on online video.  Many of his students struggle with reading and writing, and it does not help them if they have to guess about the meaning of confusing automatic captioning that lacks punctuation and proper grammar.  He would similarly like to use and share with his students UC Berkeley's online content on its Apple Podcasts channels, including podcasts related to History, but he cannot because much of it lacks captions or an accessible alternative, such as transcripts.

52. He feels like less of a human being because he cannot use the same content that is readily accessible to individuals who are not deaf.  In his view, UC Berkeley is not providing "equal access for all and, as a result, [it limits] what I am able to provide to my students."   If UC Berkeley's content were accessible, Mr. Jarashow would incorporate it into his curriculum and share it with his students.

53. Mr. Jarashow attended Fremont High School, in Fremont, California, and as a student, he used to attend football training camps at UC Berkeley. In his free time, he would like to be able to watch UC Berkeley Cal Bears football games online, but he does not because Cal Bears videos on YouTube are inaccessible to him since they lack accurate captions.

54. Andrew Phillips is deaf. Mr. Phillips is a lawyer and has taught Math, History, and Humanities at the California School for the Deaf in Fremont, California. He has deep ties to UC Berkeley. He grew up near the UC Berkeley campus and enjoyed regularly attending Cal Bears basketball games as a child. Mr. Phillips has great interest in accessing all of UC Berkeley's online content, if it were available to him. As both a lawyer and an educator, Mr. Phillips wants to access the video content produced by Berkeley Law because the school has leading professors in the immigration field, an area of interest to him. If UC Berkeley's online content were accessible, he would be able to provide additional resources to enhance his students' learning as well as his own. For example, Mr. Phillips occasionally teaches with online videos about history, but he cannot use UC Berkeley's YouTube video content because it relies too heavily on automatic captioning, which is often inaccurate. He explains that automatic captioning is not accurate or timely, is inappropriately placed on the screen, such that who is speaking is unclear, and, ultimately makes it difficult to understand what is being portrayed. Further, a simple spelling mistake in automatic captioning, such as "Iraq," in the place of "Iran," often alters the entire meaning of the sentence.

55. Mr. Phillips is also interested in and enjoys podcasts related to news and events, and reads transcripts of podcasts when available to access the information shared in the podcasts. He is particularly interested in accessing UC Berkeley's Apple Podcasts content related to social justice issues for his history classes to connect his students to current events. Because the vast majority of such online content does not provide a transcript or other alternative format for the audio information provided in the podcast, Mr. Phillips is denied access to the content.

56. Mr. Phillips lives in nearby Piedmont, California, and continues to attend Cal Bears basketball games. Mr. Phillips has difficulty watching Cal Bears basketball games online because UC Berkeley does not provide captioning on its Cal Bears YouTube channel. He would

like to watch more Cal Bears basketball games on UC Berkeley's Cal Bears YouTube channel, if UC Berkeley provided accurate captions or other effective auxiliary aids or services.

57. Mr. Phillips explains that UC Berkeley's failure to provide effective communication impacts him both personally and professionally and also adversely affects the deaf community's access to education, information, and the hearing community. As a teacher, being excluded from information hurts both him and his students, and he feels that it sends the message that UC Berkeley does not care about the education of the deaf community. It makes him feel rejected and less welcome. He has fewer resources with which to avail himself to become a better teacher and a more informed citizen. He adds that it is frustrating to spend valuable time looking for accurately captioned video content.

58. Michael Sidansky is deaf. He is an English teacher at the California School for the Deaf in Fremont, California. Mr. Sidansky incorporates online videos into his English reading and writing curriculum that exemplify to his students proper English grammar, sentence structure and syntax. He has attempted to access UC Berkeley's online content on YouTube to evaluate its educational value, but he has been deterred by its low quality of automatic captioning, which he describes as being "substandard." He explains that UC Berkeley's online content often relies on automatic captioning, which lacks contextual clues, proper syntax, and correct sentence structure. Moreover, this automatic captioning harms students who are learning written English because it presents captions in a sequence that does not distinguish who is speaking, whether one speaker is interrupting another speaker, or whether a new speaker is narrating remotely. Mr. Sidansky finds that it is often too difficult for him to ascertain who is speaking, and he has to decode everything.

59. If UC Berkeley provided accurate captioning, Mr. Sidanksy would use UC Berkeley's online content to expand his students' understanding of English. He would be particularly interested in UC Berkeley's YouTube channels or MOOCs providing analysis of English literature or pertaining to the study of journalism, including the content on UC Berkeley's Graduate School of Journalism YouTube channel.

60. Mr. Sidansky would also be interested in accessing UC Berkeley's online content

provided through its Apple Podcasts channels, including podcasts relating to history, culture, philosophy, journalism, and human interest stories.  He would also find it useful to share podcasts about public policy with his students.  Because UC Berkeley's Apple Podcasts channels generally do not provide alternatives for the audio information provided, such as accurate transcripts, he cannot access the content.

## V.   CAUSE OF ACTION

### Disability Discrimination in Violation of Title II of the ADA
### 42 U.S.C. §§ 12131 *et seq.*, 28 C.F.R. Part 35

61. The United States incorporates the preceding paragraphs of this Complaint as if set forth in full herein.

62. UC Berkeley is a public entity subject to Title II of the ADA.  42 U.S.C. § 12131(1)(B); 28 C.F.R. § 35.104.

63. UC Berkeley discriminates against qualified individuals with disabilities, by reason of such disabilities, by excluding them from participating in and denying them the benefits of its services, programs, or activities in violation of Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, and its implementing regulation at 28 C.F.R. Part 35 by:

    a. Denying qualified individuals with disabilities the opportunity to participate in or benefit from its aids, benefits, or services.  42 U.S.C. § 12132; 28 C.F.R. § 35.130(b)(1)(i);

    b. Failing to afford qualified individuals with disabilities an equal opportunity to participate in or benefit from any aid, benefit, or service provided by UC Berkeley to others.  28 C.F.R. § 35.130(b)(1)(ii);

    c. Providing qualified individuals with disabilities with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others.  28 C.F.R. § 35.130(b)(1)(iii);

    d. Failing to take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others.  28 C.F.R. §

   35.160(a)(1);

 e. Failing to furnish appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities an equal opportunity to participate in, and enjoy the benefits of its services, programs, or activities.  28 C.F.R. § 35.160(b)(1);

 f. Utilizing methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability or have the effect of defeating or substantially impairing accomplishment of the objectives of UC Berkeley's program with respect to individuals with disabilities.  28 C.F.R. § 35.130(b)(3); and

 g. Failing to make reasonable modifications in policies, practices, and procedures when the modifications are necessary to avoid discrimination on the basis of disability.  28 C.F.R. § 35.130(b)(7)(i).

64. The individuals named above, and others, are qualified individuals with disabilities within the meaning of Title II of the ADA and meet the essential eligibility requirements to participate in UC Berkeley's online services, programs, or activities.  42 U.S.C. § 12131(2).  They have been and continue to be harmed and aggrieved by UC Berkeley's discriminatory actions.

65. UC Berkeley had knowledge that there was a significant likelihood that its online content did not comply with the ADA, but nonetheless, UC Berkeley failed to implement necessary corrective measures and continues to discriminate against individuals with disabilities.

## VI. PRAYER FOR RELIEF

WHEREFORE, the United States prays that the Court:

 A. Grant judgment in favor of the United States and declare that UC Berkeley violated Title II of the ADA, 42 U.S.C. §§ 12131-12134, and its implementing regulation at 28 C.F.R. Part 35.

 B. Enjoin UC Berkeley, its officers, agents, employees, and all other persons and entities in active concert and participation with it from excluding individuals with disabilities from

participation in or denying them the benefits of its services, programs, or activities, or otherwise subjecting individuals with disabilities to discrimination, including by:

    a. Denying individuals with disabilities the opportunity to participate in or benefit from its aids, benefits, or services;

    b. Denying individuals with disabilities an equal opportunity to participate in or benefit from the aids, benefits, or services; and

    c. Utilizing methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability or have the effect of defeating or substantially impairing accomplishment of the objectives of UC Berkeley's program with respect to individuals with disabilities.

C. Order UC Berkeley to take appropriate steps to ensure that communications with individuals with disabilities are as effective as communication with others;

D. Order UC Berkeley to furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities equal opportunities to participate in, and enjoy the benefits of, UC Berkeley's services, programs, or activities;

E. Order UC Berkeley to modify policies, practices, and procedures to avoid discrimination on the basis of disability.

Respectfully submitted this 21st day of November 2022.

| | |
|---|---|
| STEPHANIE M. HINDS<br>United States Attorney<br>Northern District of California | KRISTEN CLARKE<br>Assistant Attorney General<br>Civil Rights Division<br><br>REBECCA B. BOND<br>Chief |
| /s/ Gioconda R. Molinari<br>GIOCONDA R. MOLINARI<br>Assistant U.S. Attorney<br>450 Golden Gate Ave, Fl9<br>San Francisco, CA  94102-3419<br>Telephone: (415) 436-7220<br>Gioconda.Molinari@usdoj.gov<br><br>11/21/22<br>Date | /s/ Charlotte Lanvers<br>AMANDA MAISELS<br>Deputy Chief<br>CHARLOTTE LANVERS<br>CHRISTINE KIM<br>Trial Attorneys<br>Disability Rights Section<br>Civil Rights Division<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, N.W. – 4CON<br>Washington, DC 20530<br>202-305-0706 (telephone)<br>Charlotte.Lanvers@usdoj.gov<br><br>11/21/22<br>Date |